551 A.2d 676

Harold Galena, Petitioner *v.* Commonwealth of Pennsylvania, Department of State, Bureau of Professional and Occupational Affairs, Respondent.

Argued November 4, 1988, before Judges BARRY and COLINS, and Senior Judge KALISH, sitting as a panel of three.

*Gerald Jay Pomerantz,* for petitioner.

*John F. Alcorn,* with him, *Roger H. Caffier,* State Board of Medicine, *Joyce McKeever,* Chief Counsel, Bu-

reau of Professional and Occupational Affairs and *Velma A. Boozer,* Chief Counsel, Department of State, for respondent.

OPINION BY JUDGE COLINS, December 23, 1988:

Harold Galena (petitioner) appeals from an order of the State Board of Medicine (Board), which mandated an automatic suspension of his license to practice medicine pursuant to the Medical Practice Act of 1985 (1985 Act), Act of December 20, 1985, P.L. 457, *as amended,* 63 P.S. §§422.1-422.45.[1] Petitioner requests that this Court vacate the suspension and direct that the Board conduct an evidentiary hearing.

Petitioner held a license, issued August 25, 1978, to practice medicine and surgery in the Commonwealth. On April 15, 1986, a criminal indictment was filed in the United States District Court for the Eastern District of Pennsylvania charging petitioner with 68 counts of knowingly and intentionally distributing or dispens-

---

[1] Section 40(b) of the 1985 Act, 63 P.S. §422.40(b) provides in pertinent part:

> A license . . . issued under this act shall automatically be suspended upon the . . . conviction of a felony under the laws of another jurisdiction, which, if committed in this Commonwealth, would be a felony under The Controlled Substance, Drug, Device and Cosmetic Act. . . . As used in this section, the term 'conviction' shall include a judgment, an admission of guilt or a plea of nolo contendere.

It should be noted here that Section 43(b) of the 1985 Act, 63 P.S. §422.43(b), governing reinstatement, sets out the minimum term for suspension and provides in applicable part:

> Any person whose license, certificate or registration has been suspended or revoked because of a felony conviction under the act of April 14, 1972, . . . known as The Controlled Substance, Drug, Device and Cosmetic Act, . . . may apply for reinstatement after a period of at least ten years has elapsed from the date of conviction. (Footnote omitted.)

ing controlled substances outside and other than in the usual course of professional practice, and not for a legitimate medical purpose in violation of Section 841(a)(1) of the Federal Controlled Substances Act. 21 U.S.C. §841(a)(1). The offenses charged in the indictment were committed from July 22, 1982, through June 18, 1985. Petitioner was found guilty, after a trial by jury, on October 29, 1986, of all 68 counts and was sentenced to ten years imprisonment, a special parole of twenty years, and assessed fines in the amount of $340,000 plus a special assessment of $3,400.

The 1985 Act repealed the Medical Practice Act of 1974, Act of July 20, 1974, P.L. 551, *as amended,* 63 P.S. §421.1-412.18 (1974 Act), which did not provide for *automatic* license suspension in similar circumstances. The 1985 Act became effective on January 1, 1986. As a result, the prosecuting attorney for the Board filed a petition for automatic suspension of petitioner's license. On January 25, 1988, the Board issued notice of automatic suspension and ordered petitioner to return his licensure documents to the Law Enforcement Division, Bureau of Professional and Occupational Affairs. Petitioner then filed a Petition for Review which is now before this Court.[2]

Petitioner maintains that his activity was intended as a novel though legitimate medical practice, albeit not "mainstream." He believes that given the opportunity to present evidence at a hearing before his peers, he would receive either a lessened penalty, or none at all.

---

[2] Our scope of review is limited to determining whether the decision is supported by substantial evidence and is in accordance with law, or whether any constitutional rights were violated. *Cassella v. State Board of Medicine, Bureau of Professional and Occupational Affairs,* 119 Pa. Commonwealth Ct. 394, 547 A.2d 506 (1988). Since petitioner raises constitutional issues only, this Court will confine its discussion to that area.

Petitioner asserts that he is entitled to a hearing since that was the standard at the time the felonies which formed the basis for his conviction were committed and relies on *Lewin v. State Board of Medicine,* 112 Pa. Commonwealth Ct. 109, 535 A.2d 243 (1987), in support of his position. We refuse to review the complicated issues in *Lewin,* as *Lewin* did not deal with a suspension based upon a felony conviction and is, therefore, totally distinguishable.

The case before us is directly on point with *Morris v. Department of State, Bureau of Professional and Occupational Affairs, State Board of Pharmacy,* 113 Pa. Commonwealth Ct. 318, 537 A.2d 93 (1988), wherein this Court held that nearly identical automatic suspension provisions contained in Sections 5(d) and 7(d.2) of the Pharmacy Act[3] operated prospectively and rejected similar due process and ex post facto arguments. David Morris' (Morris) license to practice pharmacy was automatically suspended by the State Board of Pharmacy for a minimum of ten years on the basis of his conviction[4] of felonies under Section 113(a)(14) of The Controlled Substance, Drug, Device and Cosmetic Act.[5] Morris requested a hearing and was denied. He then appealed that denial to this Court.

Morris contended that he was denied a hearing because Sections 5(d) and 7(d.2) of the Pharmacy Act were given improper retroactive application.[6] This Court dis-

---

[3] Act of September 27, 1961, P.L. 1700, *as amended,* 63 P.S. §§390-5(d), 390-7(d.2).

[4] Morris pled nolo contendere to five counts of unlawful dispensation of Schedule II controlled substances.

[5] Act of April 14, 1972, P.L. 233, *as amended,* 35 P.S. §780-113(a)(14).

[6] All of the acts which resulted in Morris' conviction were committed prior to the enactment of Sections 5(d) and 7(d.2) of the Pharmacy Act.

agreed, stating that merely because some of the facts upon which a statute's application depends occur prior to its enactment, it is not said to operate retrospectively. *Id.* at 322, 537 A.2d at 95.

Morris also contended that due process requires that he be granted a hearing wherein he would have the opportunity to present mitigating evidence against the ten year suspension. Judge BARRY, writing for this Court, noted that under the Pharmacy Act, as amended, the State Board of Pharmacy does not have discretion to suspend licenses for a period of less than ten years. Likewise, in the case *sub judice,* the Board does not have discretion under the 1985 Act to suspend petitioner's license for any period of less than ten years. Therefore, petitioner's argument must fail.

Petitioner further argues that Section 40(b) of the 1985 Act operates ex post facto and is, therefore, unconstitutional. He asserts that this Court's rationale in *Morris* lacks any in-depth treatment of ex post facto issues and suggests it should be further explored. While *Morris* does not directly address the ex post facto issue, we agree with the Board that petitioner presents no sound rationale why this Court should re-examine *Morris* since our holding is supported by sound reasoning. Additionally, the Board contends that petitioner's ex post facto argument necessarily fails since four of the offenses committed by petitioner occurred after Section 40(b) became law.

An ex post facto law is one which imposes punishment for past acts. *Black's Law Dictionary* 520 (5th Ed. 1979). Ex post facto constitutional provisions act as restrictions upon the action of the legislature. They are an attempt to preserve for persons the right to fair warning that their conduct will result in criminal penalties. *Commonwealth v. Grady,* 337 Pa. Superior Ct. 174, 486 A.2d 962 (1984).

In this Commonwealth in order for a law to be found constitutionally violative of the ex post facto clause contained in section 17, article I of the Pennsylvania Constitution, one of the following criteria must be present:

(1) The law makes an act criminal which was not criminal when done;

(2) The law aggravates a crime, or makes it greater than it was when done;

(3) The law changes a punishment, and makes it greater than it was when the punishable act was committed; and

(4) The law alters the rules of evidence and requires less or different testimony than the law required at the time the offense was committed, in order to convict.

*Commonwealth v. Guimento,* 341 Pa. Superior Ct. 95, 98, 491 A.2d 166, 168 (1985), (*citing Commonwealth v. Riley,* 253 Pa. Superior Ct. 260, 264-65, 384 A.2d 1333, 1335 (1978)).

Petitioner argues that criterion (3) has been met since the 1985 Act imposes a greater penalty on him than the penalty that existed under the 1974 Act when he committed the offenses. Petitioner is apparently overlooking the fact that four of his offenses were committed subsequent to the effective date of the 1985 Act. Furthermore, petitioner fails to recognize that the event which triggered the automatic suspension of his license for a minimum of ten years was his *conviction* of felonies under Section 841(a)(1) of the Federal Controlled Substances Act, and that his commission of those felonies is merely an antecedent act which set the chain of events in motion. *See Morris,* 113 Pa. Commonwealth Ct. at 322, 537 A.2d at 95.

Petitioner asserts that the automatic suspension provision of the 1985 Act operates solely as an additional punishment for his crimes. We are not in agreement.

As a physician and surgeon, petitioner held a position in the public trust. In *DeVeau v. Braisted*, 363 U.S. 144 (1960), the Supreme Court stated that our courts have long recognized provisions that disqualify convicted felons from occupying certain employments important to the public interest. The question in each case where an individual suffers unpleasant consequences for prior conduct is whether the aim of the legislature was to punish the individual for the past conduct or whether the restriction of the individual is incidental to a regulation such as proper qualifications for a profession. *Id.* at 159-160.

In *DeVeau,* the Supreme Court upheld a state statute disqualifying convicted felons from holding union office against an ex post facto challenge. The Court reasoned that the law did not seek to punish ex-felons, but rather sought to regulate the qualifications for holding union offices. Similarly, the Board in the case *sub judice,* contends and we agree that the purpose of the 1985 Act is not to punish petitioner, but rather to regulate those persons who practice medicine and surgery in the Commonwealth. The Board on page 6 of its brief quotes *Hawker v. People of the State of New York,* 170 U.S. 189 (1898) in support thereof:

> That the form in which this legislation is cast suggests the idea of the imposition of an additional punishment for past offenses is not conclusive. We must look at the substance, and not the form, and the statute should be regarded as though it in terms declared that one who violated the criminal laws of the state should be deemed of such bad character as to be unfit to practise medicine, and that the record of a trial and conviction should be conclusive evidence of such violation. . . . The state is not seeking to

further punish a criminal, but only to protect its citizens from physicians of bad character.

*Id.* at 196.

The 1985 Act specifically provides for both regulation of the medical profession and penalties for failing to abide by those regulations. Under Section 22(b) of the 1985 Act, 63 P.S. §422.22(b), the requirement of good moral character is a condition of licensure. Section 43(b) of the 1985 Act recognizes rehabilitation and provides for reinstatement of petitioner's license after ten years on condition that the Board is satisfied that petitioner's progress in personal rehabilitation is such that he is not expected to create a substantial risk of harm to the health and safety of his patients or the public.

While we acknowledge the harsh consequences visited upon petitioner, we note that this was the intention of the legislature in enacting Section 40(b) of the 1985 Act. In sum, we conclude that Section 40(b) of the 1985 Act does not operate as an ex post facto law and that petitioner's constitutional rights have not been violated. Accordingly, the Board's suspension of petitioner's license is affirmed.

## ORDER

AND NOW, this 23rd day of December, 1988, the order of the State Board of Medicine in the above-captioned matter, suspending the license of Harold Galena for a minimum of ten years, is affirmed.