Dulal BHATTACHARJEE,
M.D., Petitioner,

v.

DEPARTMENT OF STATE, State
Board of Medicine, Bureau of Professional and Occupational Affairs, Respondent.

Commonwealth Court of Pennsylvania.

Argued Sept. 10, 2002.

Decided Sept. 25, 2002.

James J. Kutz, Harrisburg, for petitioner.

Gerald S. Smith, Harrisburg, for respondent.

BEFORE: SMITH–RIBNER, Judge, LEAVITT, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

Petitioner, Dr. Dulal Bhattacharjee, has petitioned the Court for review of the May 23, 2002 order of the State Board of Medicine which granted the petition filed by the Bureau of Professional and Occupational Affairs (Bureau) on May 23, 2002 for the automatic suspension of Petitioner's medical license. Petitioner specialized in endocrinology and maintained his medical practice in Monroe County. The Board ordered Petitioner to cease and desist from the practice of medicine and surgery in Pennsylvania and to return his wall certificate, wallet card and registration certificate to the Bureau's Professional Conduct Investigator within ten (10) days of the date of service of the order.[1]

1. The questions presented in this appeal include: (1) whether Petitioner's right to due process was violated when the Board issued its order automatically suspending his medical license based on a conclusory petition which provided neither factual nor legal sup-

This matter arose out of the Bureau's filing of its petition for automatic suspension pursuant to Section 40(b) of the Medical Practice Act of 1985, Act of December 20, 1985, P.L. 457, *as amended,* 63 P.S. § 422.40(b). Section 40(b) provides:

A license or certificate issued under this act shall automatically be suspended upon ... conviction of a felony under the act of April 14, 1972 (P.L. 233, No.64), [*as amended,* 35 P.S. §§ 780–101—780–144] known as The Controlled Substance, Drug, Device and Cosmetic Act [Pennsylvania Drug Act], or conviction of an offense under the laws of another jurisdiction, which, if committed in this Commonwealth, would be a felony under the [Pennsylvania Drug Act]. As used in this section the term 'conviction' shall include a judgment, an admission of guilt or a plea of nolo contendere.

The Bureau sought a ten-year suspension of Petitioner's license as a result of his federal guilty plea to one count of knowingly and intentionally distributing and possessing with intent to distribute 1600 doses (pills, not prescriptions) of Vicodin, a Schedule III controlled substance. The Bureau alleged in its petition that the federal offense would be a felony if charged under the Pennsylvania Drug Act. The Bureau did not cite a specific section of the Pennsylvania Drug Act in its petition, but it did indicate that "based on Petitioner's felony drug conviction(s) under the [Pennsylvania Drug Act], the Commonwealth petitions the board to notify Petitioner that ... his license to practice medicine and surgery without restriction in the Commonwealth of Pennsylvania is automatically suspended." [2] Petitioner was not given notice prior to issuance of the Board's order, and consequently he had no oppor-

port and without giving Petitioner an opportunity to respond; (2) whether the Board's order is not supported by substantial evidence and is contrary to law when the petition for automatic suspension concludes that the offense to which Petitioner pled guilty would have been a felony offense under the Pennsylvania Drug Act and fails to provide factual or legal support for the conclusion; (3) whether the Board committed an error of law by automatically suspending Petitioner's license for ten years when the underlying conduct upon which Petitioner pled guilty would be charged as a misdemeanor under the Commonwealth's drug statute; (4) whether Section 40(b) of the Medical Practice Act applies to an offense committed within the Commonwealth but results in the physician being charged under the laws of another jurisdiction; and (5) whether the automatic suspension for ten (10) years violates the double jeopardy clauses of the U.S. and Pennsylvania Constitutions. The Board states that the sole issue is a legal one pertaining to a traditional comparison of the elements of Petitioner's federal felony to the elements of the felony provisions of the Pennsylvania Drug Act.

The Court's review of the Board's order is limited to determining whether constitutional rights have been violated, whether the findings of fact are supported by substantial evidence in the record and whether any errors of law have been committed. *Firman v. Department of State, State Board of Medicine,* 697 A.2d 291 (Pa.Cmwlth.1997).

2. The Board has filed a motion to strike Petitioner's brief and appendices, argued with the merits of the appeal. The Board asserted that the brief includes attachments that are not a part of the record certified to this Court, and the brief therefore does not conform to the Rules of Appellate Procedure. *See* Attachment A (U .S. Government Statement of Offense Conduct); Attachment B (Pre-sentence Investigation Report); and Attachment C (Affidavit of Former Senior Deputy District Attorney). The Court agrees with the Board that the appendices were improperly attached, and therefore it will order that they be stricken from the brief and that they not be considered in this appeal.

The record certified by the Board includes the Board's Notice of Automatic Suspension dated May 23, 2002 and the Bureau's Petition for Automatic Suspension and Exhibits # 1 (Information), # 2 (Plea Agreement) and # 3 (Judgment in Criminal Case).

tunity to respond. He was served with the order on May 24, 2002, the Friday before the Memorial Day weekend, and he immediately sought a stay pending appeal. On June 3 the Court entered an order allowing Petitioner thirty (30) days from the date of the order to close his offices.

Petitioner contends that the record is incomplete and that it does not support the Board's action. The record certified to this Court indicates that the U.S. Attorney for the Middle District of Pennsylvania filed a felony Information against Petitioner charging him with one count of knowing and intentional distribution and possession of 1600 doses of Vicodin, a Schedule III controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(d). *See* Bureau Petition for Automatic Suspension, Exhibit 1. The Information was dated December 10, 2001, and prior thereto, on November 17, 1999, Petitioner had voluntarily surrendered his registration with the U.S. Drug Enforcement Administration which allowed him to prescribe controlled substances. Petitioner contends that he wrote prescriptions after the voluntary surrender of his registration for existing patients who required medication but had not yet secured another healthcare provider. He pled guilty on December 26, 2001, and he was sentenced to three years probation, a $100 special assessment and a $10,000 fine.

■ To support his due process arguments, Petitioner maintains that had he been given an opportunity to respond to the petition for automatic suspension he would have presented facts to demonstrate that had he been charged under the Pennsylvania Drug Act, the applicable offense would have been a misdemeanor under Section 113(a)(15), 35 P.S. § 780–113(a)(15).[3] Furthermore, he would have presented an opinion from a former senior deputy district attorney with expertise in drug prosecutions to support the arguments concerning the applicable offense under the Pennsylvania Drug Act, and he would have presented evidence, among other things, to establish the medical necessity for the prescriptions that he wrote, that he is not drug dependent, that he is not a threat to his patients and that the Vicodin was dispensed in good faith in the course of his professional practice and within the scope of patient relationships and in accordance with treatment principles accepted by a segment of the medical profession.

The Board insists that Section 40(b) of the Medical Practice Act mandates the automatic suspension of a physician's license for conviction of an offense under the laws of any jurisdiction that would be a felony under the Pennsylvania Drug Act, and Section 113(f)(2) of the Pennsylvania Drug Act provides that any person who violates Section 113(a)(14) with respect to a controlled substance classified in Schedules I, II or III is guilty of a felony. Vicodin is a Schedule III controlled substance.[4] Section 104, 35 P.S. § 780–104.

---

**3.** Section 113(a)(15) of the Pennsylvania Drug Act covers: "[t]he sale at retail or dispensing of any controlled substance listed in Schedules II, III and IV to any person, except to one authorized by law to sell, dispense, prescribe or possess such substances.... The provisions of this subsection shall not apply to a practitioner licensed to prescribe or dispense such drugs, who keeps a record of the amount of such drugs purchased and a dispensing record showing the date, name, and

quantity of the drug dispensed and the name and address of the patient, as required by this act." The commission of an offense under Section 113(a)(15) constitutes a misdemeanor. *See* Section 113(b).

**4.** After Petitioner sought appellate review and supersedeas relief, the Board for the first time specified Section 113(a)(14) as the applicable equivalent to the federal charge. The Board

Moreover, it contends, the critical element of a federal violation is that the controlled substance be prescribed or dispensed outside the usual course of professional practice, *United States v. Moore*, 423 U.S. 122, 96 S.Ct. 335, 46 L.Ed.2d 333 (1975), *United States v. Rosenberg*, 515 F.2d 190 (9th Cir.1975), and the critical element of a violation of felony provisions of the Pennsylvania Drug Act is that the prescribing, dispensing or distributing of a controlled substance occurs outside the ordinary and acceptable standards of practice. *Commonwealth v. Gordon*, 511 Pa. 481, 515 A.2d 558 (1986). The Board asserts that by pleading guilty Petitioner acknowledged that he dispensed Vicodin knowing that he did so outside the ordinary and acceptable standards of practice. Therefore, because there are no factual issues to be decided, the automatic suspension of Petitioner's medical license without a hearing does not violate his due process rights. *See Moore, Horvat v. Com., Department of State Professional and Occupational Affairs*, 128 Pa.Cmwlth. 546, 563 A.2d 1308 (1989), and *Galena v. Department of State, Bureau of Professional and Occupational Affairs*, 122 Pa.Cmwlth. 315, 551 A.2d 676 (1988).

■ It is well settled in the law that a medical professional license, once obtained in compliance with the law, becomes a privilege or right in the nature of property and is safeguarded by due process requirements. *Shah v. State Board of Medicine*, 139 Pa.Cmwlth. 94, 589 A.2d 783 (1991).

In *Firman v. Department of State, State Board of Medicine*, 697 A.2d 291 (Pa. Cmwlth.1997), the Court reiterated the principle that the constitutional minimum may be satisfied when a licensee has been afforded access to materials upon which a charge is based and an opportunity to respond to that charge. Petitioner specifically argues that his due process rights were violated because a private property interest, i.e., his medical license, has been affected by the Board's order and because the procedures that the Board followed demonstrate the risk of an erroneous deprivation of that private interest. *See Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). There is little doubt that Petitioner has a substantial interest to be protected. Also Petitioner was not permitted to respond to the Bureau's petition as was the case in *Firman*, and the Court cannot conclude from this record that it is sufficient to establish that no likelihood exists of an erroneous deprivation of Petitioner's property interest.

Pursuant to *Mathews* the Court considered in *Firman* the state interest to be served by the use of a summary procedure against the burdens that may be attendant to a more rigorous procedure. The Court expressed the public policy consideration that drug-impaired medical practitioners present a clear and obvious danger to the public and that the Board must be able to respond immediately when acts of medical practitioners threaten the health and safe-

asserted the "catch all" provision at Section 113(a)(30) as an alternative.

Section 113(a)(14) prohibits "[t]he administration, dispensing, delivery, gift or prescription of any controlled substance by any practitioner or professional assistant under the practitioner's direction and supervision unless done (i) in good faith in the course of his professional practice; (ii) within the scope of the patient relationship; (iii) in accordance with treatment principles accepted by a responsible segment of the medical profession." Petitioner claims that this provision does not apply to him because at the time of the federal offense he was not a person licensed, registered or otherwise permitted to distribute controlled substances. Likewise, he contends that Section 113(a)(30) does not apply as it is a general provision subsumed by Section 113(a)(15), a more specific provision.

ty of the general public. Because the petitioner in *Firman* was a drug-impaired medical practitioner, the Court agreed that the state interest served by the automatic suspension procedure weighed heavily and that harm would result from the imposition of additional procedural safeguards in that case. However, the principles espoused in *Firman* do not pertain to the facts here because the record contains no evidence that Petitioner was drug-impaired, or was ever accused of being such, or that the general public was under any threat to its health and safety. It is noteworthy that the Board's petition was filed almost one year after the last date of commission of the offense charged in the Information, and another important consideration is the duration of the potentially wrongful deprivation of his property interest. *See Shah.*

■ Petitioner stresses that those cases in which the Court considered the propriety of the Board's automatic suspension of a medical license, including *Firman, Horvat* and *Galena,* are distinguishable from the circumstances of his case. He was not given a *Loudermill*-type hearing (*see Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)) or any other opportunity to respond as was the case in *Firman;* he was not convicted under a felony provision of the Pennsylvania Drug Act for forging prescriptions to obtain controlled substances as was the case in *Horvat;* and

he was not convicted of distributing controlled substances for non-medical purposes as was the case in *Galena.*[5] *See also Denier v. State Board of Medicine, Bureau of Professional and Occupational Affairs,* 683 A.2d 949 (Pa.Cmwlth.1996) (a divided court upheld an automatic suspension after the licensee's court-martial conviction for distributing cocaine to a drug-dependent individual with whom the licensee was engaged in a social relationship).

The Court concludes that to protect Petitioner's due process rights the Board should have provided Petitioner with an opportunity to be heard and to present evidence and argument to allow the Board to make a decision supported by the record. The Board would not have been unduly burdened by doing so. Thus the Board's procedure was constitutionally flawed, and its ten-year suspension of Petitioner's medical license without prior notice and an opportunity to respond constituted a clear violation of Petitioner's constitutional rights. In addition, the Bureau failed in its petition for automatic suspension and the Board failed in its notice of automatic suspension and its order to specify which felony provision of the Pennsylvania Drug Act was committed by Petitioner to support the automatic suspension.

In *Lyness v. State Board of Medicine,* 529 Pa. 535, 605 A.2d 1204 (1992), the Pennsylvania Supreme Court adopted the

---

5. Petitioner argues that the facts demonstrate that the automatic suspension infringed upon his right against double jeopardy. The Fifth Amendment to the U.S. Constitution provides: "nor shall any person be subject for the same offense to be twice in jeopardy of life or limb." The Supreme Court noted in *Commonwealth v. McGee,* 560 Pa. 324, 327, 744 A.2d 754, 756 (2000), that "[t]his proscription bars a second prosecution for the same offense after an acquittal or conviction, as well as multiple punishments for the same offense." Petitioner also asserts that an inquiry is required to determine whether the statutory

scheme is so punitive that it is actually criminal in nature. *Pat's Auto Sales v. Department of Transportation, Bureau of Motor Vehicles,* 744 A.2d 355 (Pa.Cmwlth.2000). Moreover, the suspension was excessive in relation to an alternative purpose of Section 40(b) of protecting citizens of this Commonwealth from incompetent practitioners.

The Court agrees that as a general proposition the concept of double jeopardy does not apply to administrative actions before agencies which regulate professional practices. *Tandon v. State Board of Medicine,* 705 A.2d 1338 (Pa.Cmwlth.1997).

basic elements of procedural due process that were articulated in *Commonwealth v. Thompson*, 444 Pa. 312, 281 A.2d 856 (1971): they are adequate notice, an opportunity to be heard and an opportunity to defend oneself before a fair and impartial tribunal that possessed jurisdiction in the matter. None of these basic and fundamental elements were satisfied in Petitioner's case. Therefore, the appropriate remedy under the circumstances presented in this case is for the Court to vacate the Board's order and to remand this case to the Board to conduct a hearing to allow Petitioner an opportunity to respond to adequate notice of the action against him and an opportunity to defend himself against the automatic suspension of his medical license. The hearing shall be conducted in accordance with the Administrative Agency Law, 2 Pa.C.S. §§ 501–508, 701–704. The disposition reached by the Court renders unnecessary any further discussion of the issues and/or arguments that Petitioner raised in this appeal.

Judge LEADBETTER did not participate in the decision in this case.

### *ORDER*

AND NOW, this 25th day of September, 2002, the order of the State Board of Medicine is vacated, and this matter is remanded to the Board to conduct an expedited hearing in accordance with the foregoing opinion. The Board shall thereafter issue its decision, which shall include findings of fact and conclusions of law. The Court grants the Board's motion to strike Attachments A, B and C to Petitioner's brief and will not consider the attachments as a part of the record before the Court in this appeal.

Jurisdiction is relinquished.